UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID MONK,

        Plaintiff,

v.

GOLDMAN SACHS & CO. LLC,
GOLDMAN SACHS GROUP, INC. and
"JANE/JOHN DOE," said individual being
Unknown at this time,

        Defendants.

Civil Action No. 22-cv-6056 (JMF)

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS GOLDMAN SACHS & CO. LLC AND THE GOLDMAN SACHS GROUP, INC.'S MOTION TO COMPEL ARBITRATION

H.P. Sean Dweck
Rourke T. Feinberg
On the Brief

THE DWECK LAW FIRM, LLP
1 ROCKEFELLER PLAZA
NEW YORK, NEW YORK 10020
T: (212) 687-8200

## TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………………..2

ARGUMENT

    THE COURT SHOULD DENY THE GOLDMAN DEFENDANTS' MOTION TO
    COMPEL ARBITRATION BECAUSE THE PLAINTIFF'S CLAIMS DO NOT FALL
    WITHIN THE SCOPE OF THE ARBITRATION AGREEMENTS……………………..4

        I.     Legal Standard……………………………………………………………4

        II.    The FAA Does Not Compel the Arbitration of the Plaintiff's Claims
             Because There Is No Connection to Any Commercial Transaction……….6

        III.   The U-4 Agreement Does Not Compel the Arbitration of the Plaintiff's
             Claims……………………………………………………………………..7

        IV.   The Confidentiality Agreement, the Signature Card Agreement, and the
             Settlement Agreement Do Not Compel the Arbitration of the Plaintiff's
             Claims……………………………………………………………………..9

CONCLUSION……………………………………………………………………………...11

# TABLE OF AUTHORITIES

**Cases:**

*Arakawa v. Japan Network Grp.*, 56 F.Supp.2d 349 (S.D.N.Y. 1999)...................................9

*Balan v. Tesla, Inc.*, 840 F.App'x 303 (9th Cir. 2021).......................................................9

*Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278 (2d Cir. 2005)..................................4

*Citadel Broadcasting Corp. v. Dolan*, 2009 WL 4928935 (S.D.N.Y. Dec. 21, 2009).................5

*Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021)...............................4

*Coscarelli v. ESquared Hospitality LLC*, 364 F.Supp.3d 207 (S.D.N.Y. 2019).......................6

*Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir. 1983).........................4, 5

*Gateguard, Inc. v. Goldenberg*, 585 F.Supp.3d 391 (S.D.N.Y. 2022)..................................5

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287 (2010).......................................4

*Haviland v. Goldman, Sachs & Co.*, 947 F.2d 601 (2d Cir. 1991).................................4, 5

*Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391 (2d Cir. 2015)..............................4

*In re Lehman Bros. Sec. & ERISA Litig.*, 706 F.Supp.2d 552 (S.D.N.Y. 2010).......................8

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004).......................................4

*Kouromihelakis v. Hartford Fire Ins. Co.*, 48 F.Supp.3d 175 (D. Conn. 2014).......................7

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995)................4

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d Cir. 2001).......5

*McMahon v. RMS Electronics, Inc.*, 618 F.Supp. 189 (1985).............................................5

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016)................................................6

*N.Y.S. Conf. of Blue Cross & Blue Shield Plans v. Travelers Inc. Co.*, 514 U.S. 645 (1995)..........9

**Statutes:**

9 U.S.C. § 2.............................................................................................................6

**PRELIMINARY STATEMENT**

This action arises out of the tortious conduct of the Defendants Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc. (collectively the "Goldman Defendants" or "Defendants"). From 2007 through 2019, the Plaintiff was employed by the Goldman Defendants. On February 17, 2022, the Plaintiff was offered and accepted a job from BSE as Senior Vice President, Premium Development, reporting directly to the Chief Executive Officer of BSE. The Plaintiff commenced his employment with BSE on February 28, 2022, wherein part of the Plaintiff's job duties at BSE was to visit with premium customers in the suites of the Barclays Center during events. The Goldman Defendants maintained a suite at the Barclays Center and, as the Plaintiff previously worked for the Goldman Defendants, he knew many people from the organization.

In March 2022, during an event at the Barclays Center, the Plaintiff visited the Goldman Defendants' suite and greeted various individuals, including George O'Garro, a Goldman Sachs Private Wealth Management employee, whom he knew from his prior employment at the Goldman Defendants. Within two days of having visited the Goldman Defendants' suite, the Plaintiff was approached by Emerson Moore ("Moore") the Chief People Officer for BSE who advised him that a Goldman Defendants employee called two BSE sales employees and made troubling statements about the Plaintiff.

During the aforementioned conversation, Moore also stated to the Plaintiff the following: (a) two women from BSE stated that they did not feel comfortable working with the Plaintiff; (b) the two women told Moore that they received a call from a person at Goldman Sachs who stated to them that "David Monk is a sexual predator. He likes to get women drunk on booze cruises."; (c) when the Plaintiff asked who the women were, Moore refused to identify them; (d) when the

Plaintiff asked Moore to identify the person from Goldman Sachs who made the call to the BSE women, Moore stated, "I can't tell you."

The Plaintiff and Moore discussed this at which time Moore said to the Plaintiff that it is just a rumor and there is nothing to do. Approximately five weeks later the Plaintiff was again approached by Moore who stated to the Plaintiff "the rumor has gone unabated, and we do not see a path for you here going forward," and advised the Plaintiff that his employment with BSE was terminated effective May 10, 2022. The statements, as set forth, were false. The false and defamatory statements were about the Plaintiff and were intended to malign the Plaintiff in his professional activities and were designed to induce others, including and specifically BSE from doing business with the Plaintiff.

The Plaintiff brought this action for damages sustained by virtue of the defamatory statements and conduct of the Defendants. Thereafter, the Goldman Defendants made a motion to both compel arbitration and dismiss the Amended Complaint. In the interest of judicial expediency, this Court has decided to rule on the Motion to Compel the arbitration of the above dispute prior to the Motion to dismiss. Because the facts as recited above have no connection to the Plaintiff's original employment or termination at the Goldman Defendants' companies, the Court should deny the Motion to Compel arbitration and allow the action to proceed.

## ARGUMENT

### THE COURT SHOULD DENY THE DEFENDANTS' MOTION TO COMPEL ARBITRATION BECAUSE THE PLAINTIFF'S CLAIMS DO NOT FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT

For the legal reasons set forth below, the Court should deny the Goldman Defendants' claims to arbitrate as the conduct alleged in the Complaint does not fall within the scope of the Plaintiff's prior employment with the Defendants or the alleged agreements. The underlying facts do not involve any commercial transactions as contemplated by the parties and there is no legal or contractual authority mandating arbitration.

**I.      Legal Standard.**

It is the law of the Second Circuit that there is no duty to arbitrate a grievance arising after the termination of the agreement between the parties, even if the agreement included an arbitration clause. *See Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir. 1983)(stock exchange rule requiring arbitration of disputes between registered representative and brokerage firm arising out of employment or termination of employment did not apply to claims of defamatory conduct of broker occurring after termination). "Thus only grievances based on conditions arising 'during the term of the agreement to arbitrate' are arbitrable after the term has ended." *Id.* (internal citations omitted)(emphasis in original).

The law is undisputed that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 297 (2010). "In deciding whether a dispute is arbitrable, [courts] must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015) *citing Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278,

281 (2d Cir. 2005); *see also Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021)(discussing in detail the limitations imposed upon arbitration clause by the words "relating to employment"); *see JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).

By its nature "arbitration is a matter of contract, and therefore a party cannot be required to submit to arbitration any dispute which it has not agreed so to submit." *AT & T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 648 (1986)(internal quotation marks omitted); *see Holick, supra* at 395; *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20 (2d Cir. 1995) *citing Haviland v. Goldman, Sachs & Co.*, 947 F.2d 601, 604 (2d Cir. 1991).

As with any contractual matter, the real concern in determining whether arbitration agreements apply is to "faithfully reflect the reasonable expectations of those who commit themselves to be bound by them." *Haviland, supra* at 605 (refusing to extend arbitration provisions of New York Stock Exchange Rules to controversies not arising out of exchange-related business). "But even where a clause is broad, there arises a presumption of arbitration as to matters collateral to the contract . . . *only if the collateral claim 'implicates issues of contract construction or the parties' rights and obligations under it.*'" *Gateguard, Inc. v. Goldenberg*, 585 F.Supp.3d 391, 401 (S.D.N.Y. 2022)(emphasis added)(fraud claim was not subject to arbitration) *citing Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001).

The Southern District commonly holds that, "in this Circuit, agreements to arbitrate disputes arising from a contract do not extend to tort claims that, although factually related, are considered legally distinct from the contractual relationship between the parties." *McMahon v. RMS Electronics, Inc.*, 618 F.Supp. 189 (1985); *Citadel Broadcasting Corp. v. Dolan*, 2009 WL 4928935 (S.D.N.Y. Dec. 21, 2009)(facts underlying post-termination tort claims were "completely different and wholly disconnected" from claims subject to arbitration). Simply put, if the causes

5

of action lack a connection to the employee's performance of his job or the actual termination of the employment, <u>the arbitration agreement is not binding</u> (underlining supplied).

## II. The FAA Does Not Compel the Arbitration of the Plaintiff's Claims Because There Is No Connection to Any Commercial Transaction.

In the present case, the Court must look to the Plaintiff's Complaint and determine whether this dispute pertains either to the Plaintiff's employment or termination with the Defendants, or whether it simply alleges tortious conduct arising after or apart from termination. *See Coudert, supra*. It is clear from the facts alleged in the Complaint and the faces of the alleged agreements that (1) the parties never agreed to arbitrate these kinds of disputes and (2) this dispute is not based upon either the Plaintiff's employment or termination from the Defendants' businesses. Rather, the dispute arises from conduct that took place apart in time, place, and circumstances from the Plaintiff's business relationships with the Defendants. The Defendants' arguments, while perhaps applicable to actions based upon a course of conduct in consummating a commercial transaction, do not comport with the jurisprudence of the Second Circuit or the Southern District.

The Defendants first argue that the FAA applies to the arbitration agreements, and therefore the Court has no choice but to submit to the agreement. However, the thrust of the FAA is to arbitrate transactional disputes involving commerce upon the consent of the parties. 9 U.S.C. § 2. The Defendants mistakenly assert that once an employee enters into an arbitration agreement, every conceivable cause of action, whether it deals with commercial transactions or not, is subject to arbitration by reason of the commercial nature of the employment. This assertion is false. "The FAA does not require parties to arbitrate when they have not agreed to do so." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). "That is, arbitration under the FAA is a matter of consent, not coercion, and courts must ultimately give effect to the contractual rights and

expectations of the parties." S*ee Coscarelli v. ESquared Hospitality LLC*, 364 F.Supp.3d 207, 215 (S.D.N.Y. 2019)(internal quotation marks omitted).

The causes of action in the present case have nothing to do with "a transaction involving commerce". 9 U.S.C. § 2. While the FAA is applicable to occurrences in the context and time of the employment, it does not apply here. The Defendants state that the Plaintiff oversaw and managed financial transactions that were interstate and international in nature. The facts giving rise to this lawsuit are simply unconnected to any aspect of the scope or period of the Plaintiff's prior employment with the Defendants. Neither the Plaintiff nor the Defendants were engaged in commercial trading by virtue of the alleged conduct, and the statement that the Plaintiff is a "sexual predator" has absolutely no bearing on the financial transactions taking place in the course of his employment.

### III. The U-4 Agreement Does Not Compel the Arbitration of the Plaintiff's Claims.

The Defendants next argue that the U-4 Agreement compels arbitration because the Plaintiff was registered with FINRA. However, this argument fails as the Plaintiff is no longer a registered member, and the facts underlying the Plaintiff's causes of action took place apart from, and two years after, the Plaintiff's registration terminated. If arbitrability is premised upon a party's registration, the Plaintiff's claims cannot possibly be subject to the U-4 Agreement as he was no longer registered by the time his claims accrued. Even if the Plaintiff had continued to register with FINRA, allegations of sexual misconduct or their veracity are not commercial transactions as contemplated by the U-4 Agreement.

Further, the Defendants have failed to explain how the tortious conduct or defamatory statements are in any way connected to the business activities of the Plaintiff while he was employed by the Defendants. They are conflating the fact that Jane/John Doe allegedly obtained

defamatory information during the course of Jane/John Doe's employment with the requirement that the underlying facts must be connected to the Plaintiff's employment with the Defendants. The alleged agreements between the Plaintiff and the Defendants have no connection to Jane/John Doe's employment, just as any agreement between the Defendants and Jane/John Doe would have no connection to the Plaintiff.

The Defendants also misrepresent the nature of the Plaintiff's claims. The Plaintiff does not allege any conduct that took place during the course of his employment with the Defendants. The Complaint explicitly limits the allegations to the time period *after* his employment with the Defendants ended. The allegations concern the Plaintiff's employment and termination with *BSE*. The U-4 agreement does not encompass or contemplate the Plaintiff's employment with BSE. The U-4 agreement does not even mention BSE! Claims arising out of the Plaintiff's termination by BSE cannot be arbitrated by the Defendants because they are outside of the scope of the agreement. The circumstances between the Plaintiff's employment at the Defendants' companies and his employment at BSE are factually distinct, and the defamation and tort claims are legally distinct from any commercial claims anticipated by the U-4 agreement.

Additionally, the Defendants rely on the District of Connecticut case of *Kouromihelakis v. Hartford Fire Ins. Co.*, 48 F.Supp.3d 175 (D. Conn. 2014). However, the material facts in *Kouromihelakis* are completely different from those before this Court. The District of Connecticut held that whether the plaintiff was forging documents while engaged in commercial transactions was an issue that arose "out of the business activities" between the parties. *See Id.* at 185. The alleged act of forgery, if true, would itself have constituted a "commercial transaction" for the purposes of arbitrability. That is not the case we have here, where false accusations of being a

"sexual predator" have absolutely no connection to the business in which either the Plaintiff or the Defendants were engaged.

Likewise, the facts in *In re Lehman Bros. Sec. & ERISA Litig.*, 706 F.Supp.2d 552 (S.D.N.Y. 2010) do not lend themselves to the present situation. *In re Lehman* found the claims arose from *how* the brokers and Lehman Bros. acted in the performance of the sales and transactions in question. Arbitrability was directly premised upon the commercial transactions that took place between the company, the brokers, and the plaintiff during employment. In our case, the causes of action are premised upon the defamatory and tortious conduct of the Defendants and Jane/John Doe taking place in a social setting apart from any commercial transaction involving the Plaintiff.

The Defendants' statement that the U-4 Agreement compels arbitration must fail because (1) the causes of action and the underlying facts are not connected to any "commercial business transactions" and/or the Plaintiff's employment/termination with the Defendants, and (2) Jane/John Doe's defamatory statements were not made in connection with any "commercial business transaction". Therefore, the Court should deny the Motion to Compel arbitration because the causes of action do not fall within the scope of the U-4 Agreement.

  **IV. The Confidentiality Agreement, the Signature Card Agreement, and the Settlement Agreement Do Not Compel the Arbitration of the Plaintiff's Claims.**

The Confidentiality Agreement, the Signature Card Agreements, and the Settlement Agreement all succumb to the same fate. The Defendants completely fail to establish that the facts giving rise to the Plaintiff's causes of action have anything to do with commercial transactions governed by the FAA or with the Plaintiff's employment/termination with the Defendants. Furthermore, the plain language of the agreements all limit the scope of arbitrability to matters related to the Plaintiff's employment at the Defendants' companies.

Section 3.17.1 of the Signature Card Agreement says arbitration is limited to disputes "arising out of or relating to or concerning the Plan or applicable award agreement." Page 25 of Defendants' **Exhibits D** and **E**. The Settlement Agreement states arbitration is limited to disputes "arising out of or based upon or relating in any way to this Agreement, or to Monk's employment or other association with GS&Co., or the termination of Monk's employment." Page 5 of Defendants' **Exhibit L**. The Confidentiality Agreement similarly limits arbitration to disputes "arising out of, based upon or relating in any way to this Agreement, or to your employment at Goldman Sachs or the termination of your employment." Page 3 of Defendants' **Exhibit C**.

From the language of these agreements, it is quite clear that none of the parties had intended for non-employment related matters to fall within the reach of the arbitration clauses. *See generally, N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Inc. Co.*, 514 U.S. 645, 655 (1995)(holding that "if 'relate to' were taken to extend to the furthest stretch of its indeterminacy,' the phrase would not have much limiting power because 'really, universally, relations stop nowhere.'")

The Defendants also rely on *Arakawa v. Japan Network Grp.*, 56 F.Supp.2d 349 (S.D.N.Y. 1999) and the Ninth Circuit case *Balan v. Tesla, Inc.*, 840 F.App'x 303 (9th Cir. 2021). *Arakawa* is wholly distinguishable because that action was based upon wrongful termination and sexual harassment/discrimination during the course of the Plaintiff's employment. The Plaintiff was explicitly suing based upon the conduct taking place during the course of her employment. Post-employment defamation was not addressed in *Arakawa*. *See Id*. Likewise in *Balan*, the real question was whether the manager approved the employee's trip to New York and whether the trip was violative of company policies. In our case, the question is not whether the conduct of a "sexual predator" would have been approved either by a manager or the Defendants, rather the Court must

determine whether the conduct alleged in the Complaint may be categorized as consummating "commercial transactions" as part of the Plaintiff's employment. Based on the arguments hereinabove, this Court should conclude that the underlying facts as alleged in the complaint have no connection to the Plaintiff's employment or termination at the Defendants' companies.

Therefore, because the Defendants have failed to satisfy their burden by showing any connection between the causes of action and the Plaintiff's employment at the Defendants' companies, the Motion to Compel arbitration must be denied and this action must be allowed to proceed.

## CONCLUSION

**FOR THE FOREGOING REASONS, THIS COURT SHOULD DENY THE DEFENDANTS' MOTION TO COMPEL ARBITRATION BECAUSE THE FACTS GIVING RISE TO THE PLAINTIFF'S CLAIMS ARE UNCONNECTED TO HIS EMPLOYMENT AT THE DEFENDANTS' COMPANIES.**

Respectfully submitted,

**THE DWECK LAW FIRM, LLP**
*Attorneys for the Plaintiff*

By: _/s/ H.P. Sean Dweck_
H.P. Sean Dweck
Rourke T. Feinberg
1 Rockefeller Plaza, Suite 1712
New York, New York 10020
T: (212) 687-8200
F: (212) 697-2521
E: hpseandweck@dwecklaw.com