**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DAVID MONK,

                    Plaintiff,

          v.

GOLDMAN SACHS & CO. LLC,
GOLDMAN SACHS GROUP, INC. and
"JANE/JOHN DOE," said individual being
unknown at this time,

                    Defendants.

Civil Action No. 22-cv-6056 (JMF)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS GOLDMAN SACHS & CO. LLC AND THE GOLDMAN SACHS
GROUP, INC.'S MOTION TO COMPEL ARBITRATION AND DISMISS
PROCEEDINGS PURSUANT TO THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 4**

Jill L. Rosenberg
Mark R. Thompson
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Tel:  (212) 506-5000
Fax: (212) 506-5151
jrosenberg@orrick.com
mthompson@orrick.com

*Attorneys for Defendants Goldman Sachs & Co. LLC and
The Goldman Sachs Group, Inc.*

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     ARGUMENT ...........................................................................................................2

     A.     The FAA Applies to the Arbitration Agreements...................................2

     B.     Monk's Claims Are Subject to Arbitration ...........................................3

           1.     Applicable Standard ................................................................3

           2.     Monk's Claims Fall Within the Scope of the U-4 Agreement...................5

           3.     Monk's Claims Fall Within the Scope of the Other Agreements .............8

III.    CONCLUSION ........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Application of Whitehaven S.F., LLC v. Spangler*,
 45 F. Supp. 3d 333 (S.D.N.Y. 2014), *aff'd*, 633 F. App'x 544 (2d Cir. 2015) ........................ 3

*Arakawa v. Japan Network Grp.*,
 56 F. Supp. 2d 349 (S.D.N.Y. 1999) ...................................................................................... 8

*Balan v. Tesla, Inc.*,
 840 F. App'x 303 (9th Cir. 2021) ...................................................................................... 9, 10

*Bensadoun v. Jobe-Riat*,
 316 F.3d 171 (2d Cir. 2003) ................................................................................................... 3

*Christensen v. Nauman*,
 73 F. Supp. 3d 405 (S.D.N.Y. 2014) ...................................................................................... 7

*Citadel Broadcasting Corp. v. Dolan*,
 No. 09-cv-6914, 2009 WL 4928935 (S.D.N.Y. Dec. 21, 2009) ............................................ 9

*Coudert v. Paine Webber Jackson & Curtis*,
 705 F.2d 78 (2d Cir. 1983) ..................................................................................................... 6

*Dietrich v. City of New York*,
 No. 18-cv-7544, 2020 WL 4226591 (S.D.N.Y. July 23, 2020) ............................................. 4

*EEOC v. Waffle House, Inc.*,
 534 U.S. 279 (2002) ................................................................................................................ 3

*Fleck v. E.F. Hutton Group*,
 891 F.2d 1047 (2d Cir. 1989) ................................................................................................. 6

*Greenberg v. Ameriprise Fin. Servs., Inc.*,
 No. 15-cv-3589, 2016 WL 3526025 (E.D.N.Y. Mar. 31, 2016) ............................................ 5

*Hawkins v. Questar Cap. Corp.*,
 No. 12-cv-376, 2013 WL 5596897 (E.D. Ky. Oct. 11, 2013) ................................................ 6

*Ins. Co. of N. Am. v. ABB Power Generation, Inc.*,
 925 F. Supp. 1053 (S.D.N.Y. 1996) ....................................................................................... 2

*Johnson v. Charles Schwab & Co.*,
 No. 09-CV-81479, 2010 WL 678126 (S.D. Fla. Feb. 25, 2010) ............................................ 8

*Jordan-Rowell v. Fairway Supermarket*,
2019 WL 570709, at *8 (S.D.N.Y. Jan. 16, 2019), *report and recommendation adopted by* 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019) ...................................................... 3

*Kouromihelakis v. Hartford Fire Insurance Co.*,
48 F. Supp. 3d 175 (D. Conn. 2014) .................................................................................. 6

*In re Lehman Bros. Sec. & ERISA Litig.*,
706 F. Supp. 2d 552 (S.D.N.Y. 2010) ................................................................................ 8

*McMahon v. RMS Electronics, Inc.*,
618 F. Supp. 189 (1985) ..................................................................................................... 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ................................................................................................................ 3

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*,
88 F.3d 129 (2d Cir. 1996) .............................................................................................. 2, 3

*Zelnik v. Fashion Inst. of Tech.*,
464 F.3d 217 (2d Cir. 2006) ............................................................................................... 4

**Statutes**

9 U.S.C. § 2 ................................................................................................................................... 2

Federal Arbitration Act ........................................................................................................... 1, 2, 3

**Other Authorities**

FINRA Rule 13200 ....................................................................................................................... 6

I.      **PRELIMINARY STATEMENT**

It is undisputed that Plaintiff David Monk ("Monk" or "Plaintiff") entered into eight valid agreements to arbitrate in connection with his employment with Defendant Goldman Sachs & Co. LLC ("GS&Co.")—a Uniform Application for Securities Industry Registration or Transfer ("U-4 Agreement"), an Employee Agreement Regarding Confidential and Proprietary Information and Materials and Non-Solicitation Agreement (the "Confidentiality Agreement"), five Signature Card Agreements, and a Settlement Agreement (collectively, the "Arbitration Agreements")--both during and after his employment.  These Arbitration Agreements require Monk to arbitrate claims arising out of and relating to his employment with GS&Co. and the termination thereof.  Monk's claims in the instant lawsuit against GS&Co., The Goldman Sachs Group, Inc. ("GS Group")[1], GS&Co.'s parent corporation, and John/Jane Doe ("Doe"), an unnamed individual allegedly "employed by Goldman Sachs"[2], are based upon alleged defamatory statements concerning Monk's employment with GS&Co. and the termination thereof, and thus, are clearly arbitrable under the Arbitration Agreements.  Monk's arguments to the contrary are meritless.

*First*, Monk argues that the Federal Arbitration Act ("FAA") does not apply here because his claims "have nothing to do with a transaction involving commerce."  Monk's argument is without merit because in determining whether the FAA applies, the Court examines whether **the agreement itself** evidences a transaction involving interstate commerce, not whether the causes of action in the complaint involve interstate commerce.  *Second*, Monk argues that his claims are not arbitrable because the causes of action and the underlying facts are not connected to any "commercial business transactions."  This argument is also meritless because the Arbitration

---

[1] GS&Co. and GS Group are referred to collectively herein as the "Goldman Defendants."
[2] Monk defines "Goldman Sachs" as both GS&Co. and GS Group.  First Amended Complaint ("FAC") ¶ Intro., ECF No. 11.

Agreements provide that all claims relating to Monk's employment with GS&Co. are arbitrable; there is no language in the agreements or applicable case law limiting arbitrability to claims involving "commercial business transactions."  *Third*, Monk argues that his claims are not related to his employment with GS&Co.  This argument fails because the unrebutted deposition testimony submitted by the Goldman Sachs Defendants, **procured by Monk himself**, reveals that the alleged defamatory statements, which are the basis of Monk's claims, are that Monk engaged in inappropriate conduct with female Goldman Sachs employees and was "fired for sexual harassment at Goldman Sachs."

## II.     ARGUMENT

### A.     The FAA Applies to the Arbitration Agreements

As an initial matter, contrary to Monk's contentions, the FAA applies here.  Monk argues that the FAA does not apply here because "The causes of action in the present case have nothing to do with 'a transaction involving commerce.'"  Opp. at 7 (quoting 9 U.S.C. § 2).  Monk's argument is meritless because in determining whether the FAA applies, the Court examines whether **the agreement itself** evidences a transaction involving interstate commerce, not whether the causes of action in the complaint involve interstate commerce.  *See, e.g.*, *Ins. Co. of N. Am. v. ABB Power Generation, Inc.*, 925 F. Supp. 1053, 1057 (S.D.N.Y. 1996) ("Since **the contract** evidences a transaction involving interstate commerce, the Federal Arbitration Act (the 'FAA') applies…." (emphasis added)).  The Court only examines the nature of the dispute after it has determined that the FAA applies to the arbitration agreement.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996).

Here, the FAA is applicable to the Arbitration Agreements because they were made in connection with Monk's employment with GS&Co. in which he engaged in interstate commerce. Declaration of Aime Hendricks ISO Motion to Compel ("Hendricks Dec.") ¶¶ 5, 7–9, 11, 12, ECF

No. 23; *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA.").[3]

### B.    Monk's Claims Are Subject to Arbitration

Because the FAA applies here, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or a[]…defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  A dispute is arbitrable under the FAA when:  (1) there exists a valid agreement to arbitrate under the contract in question; and (2) the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement.  *Nat'l Union*, 88 F.3d at 135.  Monk does not dispute that the Arbitration Agreements are valid agreements to arbitrate; thus, the first condition is satisfied.  As set forth below, the second condition is satisfied because the instant dispute falls within the scope of the Arbitration Agreements.

### 1.    Applicable Standard

"In determining whether a plaintiff's claims fall within the scope of an arbitration agreement on a motion to dismiss or to compel arbitration under the FAA, a court should apply the same standard as would be applicable to a motion for summary judgment." *Jordan-Rowell v. Fairway Supermarket*, 2019 WL 570709, at *8 (S.D.N.Y. Jan. 16, 2019), *report and recommendation adopted by* 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019).[4]  Under this standard, when the moving party has documented particular facts in the record, "the opposing party must set

---

[3] The FAA is also applicable to the five Signature Card Agreements and the Settlement Agreement for the independent reason that these agreements both contain language specifically providing for the application of the FAA.  Hendricks Dec., Exs. F–J ¶ 1, Ex. L ¶ 8.

[4] *See also Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability…"); *Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 342–43 (S.D.N.Y. 2014) (holding that the party resisting arbitration "shoulders the burden of proving its defense" when it "asserts that the arbitration contract does not encompass the claims at issue"), *aff'd*, 633 F. App'x 544 (2d Cir. 2015).

forth specific facts showing that there is a genuine issue for trial." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 224 (2d Cir. 2006) (internal quotation marks omitted).  "[U]nsupported allegations in the pleadings cannot create a material issue of fact."  *Dietrich v. City of New York*, No. 18- cv- 7544, 2020 WL 4226591, at *5 (S.D.N.Y. July 23, 2020).

Here, the only evidence in the record as to the alleged defamatory statements is the deposition testimony of Emerson Moore ("Moore"), the Chief People Officer of BSE Global ("BSE"), the entity Monk claims he was fired from as a result of the alleged defamatory statements by Doe, and the documents in support thereof submitted by the Goldman Defendants.  Declaration of Mark Thompson ISO Motion to Compel ("Thompson Dec"), Ex. B (Moore Depo. 18:7-21:4; 34:4-35:4; 55:2-6), Ex. C, ECF No. 24.  This evidence, **which was procured by Monk himself**,[5] provides that the alleged defamatory statements were that Monk engaged in inappropriate conduct with female Goldman Sachs employees and was "fired for sexual harassment at Goldman Sachs." *Id.*  Monk has failed to offer any evidence to rebut this evidence as to the alleged defamatory statements.

Thus, in determining whether Monk's claims fall within the scope of the Arbitration Agreements, the Court should disregard the unsupported allegations in the FAC that the alleged defamatory statements were that "David Monk is a sexual predator.  He likes to get women drunk on booze cruises."[6]  Instead, the Court should evaluate the arbitrability of his claims based on the unrebutted evidence in the record, which provides that the alleged defamatory statements regarding Monk were that he engaged in inappropriate conduct with female Goldman Sachs employees and

---

[5] Moore's deposition was taken by Monk on September 19, 2022 in an attempt to discover Doe's identity and the contents of his/her alleged statements.  Both Monk and the Goldman Defendants agreed and represented to the Court that they believed that Moore's deposition testimony would be "likely to reveal information relevant to Defendants'…anticipated motion to compel…." and it has.  *See* Letter Requesting Extension of Time, ECF No. 19.

[6] The allegations are not only unsupported, they are directly contradicted by the evidence—the term "sexual predator" was not used in describing the rumor regarding Monk.  Thompson Dec., Ex. B (Moore Depo. 16:17-17:2; 31:10-32:5).

was "fired for sexual harassment at Goldman Sachs."[7]  In any event, as discussed below, whether the Court looks to Moore's deposition testimony and its supporting documents or only the allegations in the FAC—the result is the same.  Monk's claims fall within the scope of each of the Arbitration Agreements and thus, should be compelled to arbitration.

### 2.   <u>Monk's Claims Fall Within the Scope of the U-4 Agreement</u>

Monk's claims fall within the scope of the U-4 Agreement.  The U-4 Agreement (which looks to the Rules of the Financial Industry Regulatory Authority ("FINRA")) requires arbitration "if the dispute arises out of the business activities of a member or an associated person and is between or among: •Members; •Members and Associated Persons; or •Associated Persons." Hendricks Dec., Ex. A § 4; Thompson Dec. ¶ 6, Ex. D (FINRA Rule 13200(a)).  Thus, to determine whether a dispute is arbitrable under the U-4, the court must answer two questions:  (1) whether the instant dispute is "between or among Members; Members and Associated Persons; or Associated Persons" as defined by the FINRA Rules; and (2) whether it arises "out of the business activities of a member or an associated person."  *See Greenberg v. Ameriprise Fin. Servs., Inc.*, No. 15-cv-3589, 2016 WL 3526025, at *6 (E.D.N.Y. Mar. 31, 2016).

The answer to the first question is yes because the instant dispute is between a Member as defined by the FINRA Rules—GS&Co.—and an Associated Person as defined by the FINRA Rules—Monk.  *See* Hendricks Dec. ¶¶ 4, 6.  Monk argues that the instant dispute should not be compelled to arbitration because "Plaintiff is no longer a registered member, and the facts underlying the Plaintiff's causes of action took place apart from, and two years after, the Plaintiff's registration terminated" and "[i]f arbitrability is premised upon a party's registration, the Plaintiff's claims cannot possibly be subject to the U-4 Agreement as he was no longer registered by the time

---

[7] The Goldman Defendants do not admit for purposes of the merits of this dispute that these statements were made by Doe.

his claims accrued."

First, Monk's argument fails because the FINRA Code defines "Associated Person" to include "a person formerly associated with a member" and Monk is a person formerly associated with a Member—GS&Co.  Thompson Dec., Ex. E (FINRA Rule 13100 (b), (u)).  Second, Monk's argument fails because no matter when his claims accrued, the facts underlying Monk's claims concern his conduct while he was employed by GS&Co. and registered with FINRA and thus, are subject to arbitration.  *Kouromihelakis v. Hartford Fire Insurance Co.*, 48 F. Supp. 3d 175, 185 (D. Conn. 2014) is instructive.  In *Kouromihelakis*, plaintiff alleged that his former employer defamed him by filing an amendment of plaintiff's Form U5 with FINRA **after his termination**, falsely claiming that defendant had engaged in fraud two years earlier in January 2011 while he was still employed by the defendant.  The court held that the "the underlying dispute in the defamation claim is whether the plaintiff forged a document in January 2011 while he was employed by the defendant" and thus, was subject to arbitration under the plaintiff's U-4 agreement.  Similarly, here, the underlying dispute in this defamation action is whether Monk, in fact, engaged in the conduct of which he was allegedly accused by Doe during his employment with GS&Co.; thus, it is subject to arbitration under the U-4 Agreement.  That Monk's claim may have arisen after his termination from GS&Co. and after his registration terminated does not alter that result.[8]

The answer to the second question—whether the instant dispute arises "out of the business activities of a member or an associated person"—is also yes.  Courts have made clear that

---

[8] Monk cites *Coudert v. Paine Webber Jackson & Curtis*, 705 F.2d 78 (2d Cir. 1983), to support his argument that his claim should not be arbitrable because it arose after his termination from GS&Co.  In *Fleck v. E.F. Hutton Group*, 891 F.2d 1047, 1052 (2d Cir. 1989), however, the Second Circuit held that the court in *Coudert* "missed the mark" to the extent it "implied that no torts committed after employment ends are arbitrable." *See also Hawkins v. Questar Cap. Corp.*, No. 12-cv-376, 2013 WL 5596897, at *4 (E.D. Ky. Oct. 11, 2013) (holding post-contractual tortious interference claims were arbitrable and noting "Rule 13200 does not…contain any time limitation provisions.").

"employment-related disputes between a FINRA member and an associated person…are 'business activities' arbitrable before FINRA." *Christensen v. Nauman*, 73 F. Supp. 3d 405, 412 (S.D.N.Y. 2014).   Whether the instant dispute is examined through the lens of the unrebutted deposition testimony or the allegations in the FAC—it is an employment-related dispute between a FINRA Member (GS&Co.) and an Associated Person (Monk), and thus, arises out of the business activities of both a Member (GS&Co.) and an Associated Person (Monk).  *See* Mem. ISO of Mot. to Compel at 13–16, ECF No. 22.   Monk contends that his claims are not within the scope of the U-4 Agreement because his "causes of action and the underlying facts are not connected to any 'commercial business transactions'" Opp. at 9.   But there is no requirement that a claim be connected to a "commercial business transaction" to be arbitrable under a U-4 agreement; the claim need only be "employment related." *Christensen*, 73 F. Supp. 3d at 412–13 (compelling a compensation dispute to FINRA arbitration).

Monk also argues that the claims are not within the scope of the U-4 Agreement because "the causes of action and the underlying facts are not connected to…Plaintiff's employment/termination with the Defendants", Opp. at 9, and instead his "allegations concern the Plaintiff's employment and termination with BSE," *id.* at 8.  Monk's argument might have weight if this were a case where Monk asserted claims against non-FINRA Member BSE regarding his employment with BSE, for example, breach of contract or wrongful termination.  It is not.  This is a case where Monk has brought claims against his former employer and FINRA-Member (GS&Co.), its parent company (GS Group) and an unnamed GS&Co. employee (Doe) based on statements concerning his employment with GS&Co. and the termination thereof.  Because the instant dispute is a dispute that arises out of Monk's employment with GS&Co., it "arises out of" both GS&Co.'s "business activities" as a member and Monk's "business activities" as an

"Associated Person" and thus, must be compelled to arbitration.

In the alternative, even assuming that the instant dispute does not arise out of the "business activities" of GS&Co. as a "Member" and Monk as an "Associated Person" (it does), the parties' dispute must nevertheless be arbitrated under the FINRA Rules for the independent reason that it arises out of the "business activities" of GS&Co., alone.[9]  Given that Monk has alleged that "when Doe made the offending statements…Doe was acting in the course of his/her employment by Goldman Sachs," (FAC ¶ 33) he cannot dispute that his claims that Doe defamed him arise out of GS&Co.'s "business activities."[10]  Monk cannot have it both ways.

### 3.  Monk's Claims Fall Within the Scope of the Other Agreements

Even if the Court finds that Monk's claims are not arbitrable under the U-4 Agreement because they do not involve a "commercial business transaction", they clearly fall within the broad arbitrability language of the Confidentiality Agreement, the five Signature Card Agreements and the Settlement Agreement.  Each of these agreements contains broad language mandating arbitration of any claim arising out of or relating to Monk's employment at GS&Co. or the termination thereof without any limitation that such claim involve a "commercial business transaction."  Hendricks Dec., Ex. A § 15A, Ex. C ¶ 11, Exs. F–J ¶ 1, Ex. L ¶ 8.  Courts that have considered arbitration clauses similar to the ones at issue here have concluded that the clauses should be interpreted broadly to cover any disputes arising out of the employment relationship. *See Arakawa v. Japan Network Grp.*, 56 F. Supp. 2d 349, 353 (S.D.N.Y. 1999).[11]  Monk's claims

---

[9] *Cf. Johnson v. Charles Schwab & Co.*, No. 09-CV-81479, 2010 WL 678126, at *4 (S.D. Fla. Feb. 25, 2010) (where parties' only relationship is governed by FINRA, defendant's decision to send the plaintiff an allegedly defamatory letter was a "business decision arising out of that relationship" and thus subject to FINRA arbitration).

[10] *Cf. In re Lehman Bros. Sec. & ERISA Litig.*, 706 F. Supp. 2d 552, 560 (S.D.N.Y. 2010) ("[Employee] allegedly is liable under…respondeat superior….This manifestly is 'in connection with [employer's] business activities.'").

[11] Monk argues that *Arakawa* is "distinguishable because that action was based upon wrongful termination and sexual harassment/discrimination during the course of the Plaintiff's employment." Opp. at 10.  *Arakawa* is not distinguishable on this basis.  This case concerns claims based on statements that Monk was fired by GS&Co. for sexual harassment; thus, *Arakawa* supports arbitrability.

clearly arise out of the employment relationship between Monk and GS&Co. and thus, should be compelled to arbitration.  *See Balan v. Tesla, Inc.*, 840 F. App'x 303, 304 (9th Cir. 2021).[12]

Monk attempts to distinguish *Balan* on the grounds that "in *Balan*, the real question was whether the manager approved the employee's trip to New York and whether the trip was violative of company policies" and "[i]n our case, the question is not whether the conduct of a 'sexual predator' would have been approved either by a manager or the Defendants, rather the Court must determine whether the conduct alleged in the Complaint may be categorized as consummating 'commercial transactions' as part of the Plaintiffs employment."  Opp. at 10–11.  *Balan* cannot be distinguished on these or other grounds.

In *Balan*, the plaintiff-employee alleged that post-termination statements by his former employer, Tesla, that he "illegally recorded internal conversations within Tesla" and "booked an unapproved trip to New York at Tesla's expense" were defamatory.  840 App'x at 304.  The Ninth Circuit held that the claims based on these statements were arbitrable pursuant to an agreement that covers claims "arising from or relating to" Balan's employment.  With respect to the illegally recorded conversations, the Court held that the claim based on this statement was arbitrable because "the defamatory nature of the statement—whether Balan's conduct was illegal—…require[d] at least some understanding of Balan's employment with respect to her workplace environment…and any company policies regarding employees' expectations of privacy and confidentiality…."  *Id.* at 305.  Similarly, with respect to the statement that Balan "booked an

---

[12] Monk also cites *McMahon v. RMS Electronics, Inc.*, 618 F. Supp. 189 (1985) and *Citadel Broadcasting Corp. v. Dolan*, No. 09-cv-6914, 2009 WL 4928935 (S.D.N.Y. Dec. 21, 2009) for the proposition that "in this Circuit, agreements to arbitrate disputes arising from a contract do not extend to tort claims that, although factually related, are considered legally distinct from the contractual relationship between the parties."  Opp. at 5.  These cases are easily distinguishable on the grounds that the parties in those cases agreed only to arbitrate claims arising from or relating to their contractual agreements with each other.  Here, the Arbitration Agreements contain broader language requiring arbitration of all claims arising out of or relating to Monk's employment; the language is not limited to claims arising out of or relating to the contracts between the parties.

unapproved trip to New York at Tesla's expense," the court held that the claim based on this statement was arbitrable because "[r]esolving the defamatory nature of the statement—whether any planned trip to New York was 'unapproved'—requires some understanding of Balan's employment, including whether she was bound by any company policies and procedures to obtain advance approval when booking work trips, whether she actually received company approval for any planned trip, and whether the planned trip fell within the scope of her employment duties and responsibilities." *Id.*

Here, as in *Balan*, resolving the defamatory nature of the statement as set forth in Moore's unrebutted deposition testimony—whether Monk engaged in "inappropriate" activity with female Goldman Sachs employees and was terminated for sexual harassment—will require an understanding of Monk's employment with GS&Co., including the actions that he allegedly engaged in during his employment and GS&Co.'s policies and practices regarding "inappropriate behavior," sexual harassment, and termination. Similarly, resolving the defamatory nature of the statements as alleged in the FAC will require an understanding of Monk's actions while at GS&Co, including whether he acted as a "sexual predator" and got women drunk on "booze cruises" during his employment[13], GS&Co.'s policies regarding inappropriate entertainment and alcohol use, and what impact such actions would have had on his employment with GS&Co., since it is clear that such actions were not purely private and entirely disconnected from his employment at GS&Co.[14]

## III.   **CONCLUSION**

The Goldman Defendants request that the Court compel Monk's claims to arbitration.

---

[13] Monk cannot dispute that these incidents occurred during and in connection with his employment with GS&Co. considering that when he was confronted with the statements, which are the subject of this action, by Moore, he gave "his side of the story as to what exactly took place **at Goldman**." Thompson Dec., Ex. B (Moore Depo. 29:7-9).

[14] *See* FAC ¶¶ 33-34 ("[W]hen Doe made the offending statements…Doe was acting in the course of his/her employment by Goldman Sachs…[A]ny knowledge that Doe had regarding Plaintiff at the time the statements were made was obtained through Doe's employment with Goldman Sachs.").

Dated: New York, NY
October 27, 2022

Respectfully submitted,


By: */s/ Jill L. Rosenberg*

Jill L. Rosenberg
Mark R. Thompson
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Tel:  (212) 506-5000
Fax: (212) 506-5151
jrosenberg@orrick.com
mthompson@orrick.com

*Attorneys for Defendants Goldman Sachs & Co.*
*LLC and The Goldman Sachs Group, Inc.*