UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID MONK,<br><br>              Plaintiff,<br><br>    v.<br><br>GOLDMAN SACHS & CO. LLC,<br>GOLDMAN SACHS GROUP, INC. and<br>"JANE/JOHN DOE," said individual being<br>unknown at this time,<br><br>              Defendants. | Civil Action No. 22-cv-6056 (JMF) |

## REDACTED SETTLEMENT AGREEMENT

       In accord with the Court's Opinion and Order dated January 3, 2023, attached hereto is a copy of the Settlement Agreement between Plaintiff David Monk and Defendants Goldman Sachs & Co. LLC and Goldman Sachs Group, Inc. with the settlement amount redacted.

Dated: New York, NY
         January 5, 2023

Respectfully submitted,

By: */s/ Mark R. Thompson*
Jill L. Rosenberg
Mark R. Thompson
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
Tel: (212) 506-5000
Fax: (212) 506-5151
jrosenberg@orrick.com
mthompson@orrick.com

*Attorneys for Defendants Goldman Sachs & Co. LLC and The Goldman Sachs Group, Inc.*

1

4154-3100-0132.1

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT AND RELEASE (the "Agreement") is made and entered into by and between David Monk ("Monk"), Goldman Sachs & Co. LLC ("GS&Co."), and Goldman Sachs Group, Inc. ("GS Group"). Monk, GS&Co., and GS Group are collectively referred to as the "Parties" and individually as a "Party" herein.

WHEREAS, Monk was an employee of GS&Co. whose employment was terminated on March 19, 2019;

WHEREAS, on March 6, 2020, Monk filed a Statement of Claim with FINRA Dispute Resolution (FINRA Arbitration No. 20-00770) (the "Arbitration") against GS&Co. alleging that it improperly cancelled Restricted Stock Units and Shares at Risk awarded to him pursuant to the terms of The Goldman Sachs Amended and Restated Stock Incentive Plan, as amended from time to time, (the "SIP") issued in connection with his employment with GS&Co.;

WHEREAS, on August 21, 2020, GS&Co. moved to amend the caption of the Arbitration to replace GS&Co. with GS Group as the Respondent;

WHEREAS, on August 21, 2020, GS Group filed a Statement of Answer in response to Monk's Statement of Claim denying Monk's allegations (the "Statement of Claim");

WHEREAS, on September 10, 2020, the Arbitration Panel ordered that the caption of the Arbitration should be amended to add GS Group but that GS&Co. should remain in the caption as well;

WHEREAS, on October 7, 2020, Monk filed an Amended Statement of Claim (the "Amended Statement of Claim") adding GS Group to the caption of the Arbitration as a Respondent and repeating the allegations made in the original Statement of Claim;

WHEREAS, on October 27, 2020, GS&Co. and GS Group filed an Amended Statement of Answer (the "Amended Statement of Answer") in response to Monk's Amended Statement of Claim denying Monk's allegations;

WHEREAS, the Parties desire that the Arbitration and other matters between them shall be immediately and finally compromised, and settled, and be put permanently to rest, and that they be spared the time and expense of further or future litigation of these matters; and

NOW, THEREFORE, in consideration of the mutual covenants and promises hereinafter provided, and of the actions taken or to be taken pursuant thereto, the sufficiency of which is hereby acknowledged, and intending to be legally bound, the Parties agree as follows:

1. **Payment.** Subject to, and in consideration for, Monk's execution and non-revocation of this Agreement, GS&Co. will pay Monk a gross amount of ▮▮▮▮▮ (referred to herein as the "Settlement Amount") within thirty (30) calendar days of the Effective Date of this Agreement as follows:

   (a)  ▮▮▮▮▮ will be sent to Monk via wire transfer for his alleged damages; and

Page 1 of 9

4133-0944-7985.3

(b) ▓▓▓▓▓▓ will be sent to Monk's counsel, Kaiser Saurborn & Mair PC, via wire transfer for attorneys' fees and costs.

GS&Co. will issue appropriate Forms 1099 reflecting these payments. Both Monk and his counsel shall provide GS&Co. completed Forms W-9 and valid wire instructions as a condition for issuance of the Settlement Amount. Monk agrees that he is responsible for any taxes resulting from this payment and any other benefit provided in this Agreement.

2. <u>Release</u>. Monk, on behalf of himself and any representatives, agents, estate, heirs, successors and assigns, and with full understanding of the contents and legal effect of this Agreement and having consulted with counsel, hereby releases and discharges GS&Co., GS Group, each of their parents, subsidiaries and affiliates, and each of their respective officers, directors, employees, shareholders, partners, members, agents, representatives, attorneys, insurers, consultants, and their predecessors, successors, heirs, executors, administrators, and assigns, from any and all claims, actions, causes of action, complaints, liabilities or losses of any kind or nature whatsoever, that Monk ever had or now has, whether known or unknown, suspected or unsuspected, and whether arising in tort, contract, statute, or equity, before any federal, state, local, or private court, agency, arbitrator, mediator, or other entity, regardless of the relief or remedy, including, but not limited to, claims that were or could have been raised in the Arbitration and/or relate to Monk's employment by GS&Co. or the termination of that employment, and any claims Monk may have or might have had concerning the delivery of any equity awards made to him or forfeiture of any shares delivered under GS&Co. or GS Group's equity-based award programs including, without limitation, the SIP, or the amount or other terms or conditions of any such awards, and any claims Monk may have or might have had that additional awards should have been made to him under such programs, as well as any claims relating to any payments or benefits (including, without limitation, those provided for herein and under such programs) and any tax consequences thereof. Such claims, include, but are not limited to, claims under the Fair Labor Standards Act; Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991 (42 U.S.C. § 1981); the Rehabilitation Act of 1973, as amended; the Employee Retirement Income Security Act of 1974, as amended; the Americans with Disabilities Act, as amended; the Family and Medical Leave Act; the Genetic Information Nondiscrimination Act of 2008; the Worker Adjustment and Retraining Notification Act; the Equal Pay Act; the Age Discrimination in Employment Act ("ADEA"); New York State Human Rights Law; the New York Labor Law (including but not limited to the New York State Worker Adjustment and Retraining Notification Act, all provisions prohibiting discrimination and retaliation, and all provisions regulating wage and hour law); the New York State Correction Law; the New York State Civil Rights Law; Section 125 of the New York Workers' Compensation Law; the New York City Human Rights Law; any and all other federal, state or local statutes; and any other statutory claim, tort claim, employment, or other contract or implied contract claim, or common law claim for wrongful discharge, breach of contract, breach of an implied covenant of good faith and fair dealing, defamation, or invasion of privacy.

3. <u>Discontinuance of Arbitration</u>. Contemporaneously with the execution of this Agreement, the Parties, by their respective attorneys of record, shall enter into and execute the Stipulation of Discontinuance with Prejudice in the form annexed hereto as Exhibit A (the "Stipulation"). Within ten (10) days following the Effective Date of this Agreement, counsel for GS&Co. and GS Group will file the Stipulation with FINRA.

4.      No Pending or Future Lawsuits/Nothing Additional Owed. In accepting the terms of this Agreement, Monk acknowledges that the payment and other benefits offered pursuant to this Agreement satisfy, and are in excess of, any payment, benefit, or other thing of value to which Monk might otherwise be entitled under any policy, plan or procedure of GS&Co. or GS Group or any Agreement between Monk and GS&Co. or GS Group, and Monk expressly waives any right or claim that Monk may have to payment for back pay, front pay, interest, bonuses, accrued vacation and attorneys' fees. Other than the Arbitration, Monk represents that he has not filed any action, complaint, charge, grievance or arbitration against GS&Co. or GS Group with respect to events occurring prior to the date of this Agreement.

5.      Confidential and Proprietary Information and Materials. In connection with Monk's employment with GS&Co., Monk acknowledges that he had access to non-public or other proprietary information and materials, including but not limited to (a) the names, addresses, phone numbers, accounts and other information concerning clients and prospective clients of Goldman Sachs; (b) other information and materials describing or relating to the business and financial affairs, personnel matters, products, operating procedures, organizational responsibilities, marketing matters, or policies or procedures of GS&Co. or its partners, employees, clients or other third parties (including, without limitation, portfolio structure, tax information, investment techniques and trading strategies used in, and the performance records of, client accounts, or other investment products); and (c) information and materials concerning the personal affairs of partners or employees of Goldman Sachs (all information and materials referred to in this sentence shall constitute "Confidential and Proprietary Information and Materials"). Monk agrees that he has held and will hold all Confidential and Proprietary Information and Materials in strict confidence. Monk further agrees that he has not and will not directly or indirectly use, give, disclose, copy, reproduce, sell, assign, license, market or transfer Confidential and Proprietary Information and Materials to any person, firm or corporation outside GS&Co, except as authorized by GS&Co.

Monk acknowledges that GS&Co. will be entitled to pursue injunctive relief to enforce his obligations under this section. Monk's signature on this Agreement will confirm that he has returned to GS&Co. all originals and copies of documents and other materials (in hard or electronic form) constituting or derived from Confidential and Proprietary Information and Materials which came into his possession or control as a result of his employment with GS&Co. Monk also undertakes immediately to return to GS&Co. any Confidential and Proprietary Information and Materials belonging to GS&Co. which subsequently come into his possession, custody or control.

Monk's representations with respect to and adherence to the terms of this section are a significant element of the consideration for GS&Co.'s promises under this Agreement. Monk agrees that in the event of a breach of any of his obligations under this section, GS&Co. will have no further obligations to him under this Agreement, and, to the extent permissible by law, Monk will receive no further amounts hereunder. GS&Co. retains its right to pursue additional remedies for such a breach as may be allowed under applicable law.

Nothing herein, or in any other GS&Co. agreement or policy, shall limit Monk's right under applicable law to provide truthful information to the appropriate governmental authority, including any regulatory, judicial, administrative or other governmental entity, or preclude Monk from filing a charge with or participating in any investigation or proceeding conducted by a governmental authority. Notwithstanding the foregoing, Monk agrees to waive his right to recover

monetary damages in connection with any charge, complaint, or lawsuit filed by him or by anyone else on his behalf (whether involving a governmental authority or not); provided that he is not agreeing to waive, and this Agreement shall not be read as requiring Monk to waive, any right Monk may have to receive an award for information provided to any governmental authority.

Monk also may have immunity from civil or criminal liability for the confidential disclosure of a trade secret as set forth in 18 U.S.C. § 1833. In particular, under current law an individual cannot be held criminally or civilly liable under any federal or state trade secret law for any disclosure of a trade secret that is made (i) in confidence to federal, state or local government officials, either directly or indirectly, or to an attorney, and is solely for the purpose of reporting or investigating a suspected violation of the law, (ii) under seal in a complaint or other document filed in a lawsuit or other proceeding, or (iii) to Monk's attorney in connection with a lawsuit for retaliation for reporting a suspected violation of law (and the trade secret may be used in the court proceedings for such lawsuit) as long as any document containing the trade secret is filed under seal and the trade secret is not disclosed except pursuant to court order.

6. Non-Disclosure. Monk, agrees that the existence, terms and conditions of this Agreement and the facts and allegations regarding the Parties' disputes, including but not limited to those raised in the Statement of Claim, the Amended Statement of Claim, the Answer, and the Amended Answer, are fully confidential and may not be disclosed to any other person or entity except as may be required by law (including in response to regulatory, judicial, administrative, or other governmental inquiry or process), and except that Monk may disclose this Agreement and its terms to his accountants, lawyers, financial advisors, and immediate family members; provided that Monk first gives notice of this provision to each such person to whom disclosure is to be made and obtains his or her consent to abide by the terms of this provision.

Monk further agrees that he has not and will not (except without prior written authorization from GS&Co.) publicize, disclose or allow disclosure of any information about GS&Co., its present or former partners, directors, officers, employees, agents or clients, its or their business and financial affairs, personnel matters, operating procedures, organizational responsibilities, marketing matters, products and policies or procedures (including, without limitation, techniques and trading and other strategies used therein) and/or any aspects of his candidacy for employment or his tenure as an employee of GS&Co. or of the termination of such employment, (a) with any reporter, author, producer or similar person or entity, or (b) take any other action seeking to publicize or disclose any such information in any way likely to result in such information being (i) made available to the general public in any form, including books, articles or writings of any other kind, or film, videotape, audiotape or any other medium, or (ii) used for solicitation or marketing for any product other than a product that is solely a GS&Co. product.

Monk further agrees that he has not and will not disclose or allow disclosure of financial and/or investment performance information of or concerning GS&Co., its present or former partners, directors, officers, employees, agents or clients, or the portfolios, accounts, or funds it manages, in connection with the solicitation of business or marketing by or on behalf of himself or any entity other than GS&Co., with which is or becomes associated.

7. Non-Disparagement and Cooperation. Monk agrees that he will not make any oral or written negative, derogatory or disparaging statement (whether or not such statement legally

constitutes libel or slander) about GS&Co. or GS Group, about the termination of his employment, or about any of GS&Co. or GS Group's present or former partners, managing directors, shareholders, employees, agents, directors, officers, or clients.

GS&Co.'s policy on responding to reference inquiries concerning former employees is that all requests for information are to be forwarded without comment to the appropriate contact in the Human Capital Management Division. The practice of the Human Capital Management Division is to provide only dates of employment, title, and department; and not to provide compensation information unless the former employee requests that it be included.

Monk also agrees that he will cooperate with GS&Co. and its respective counsel in connection with any internal, governmental or regulatory investigation and any regulatory or judicial administrative proceeding, arbitration or litigation relating to any matter that occurred during Monk's employment in which he was involved or of which he has knowledge. GS&Co. will reimburse Monk for reasonable expenses (other than attorney's fees) incurred by him in complying with this provision.

8.      Arbitration. To the fullest extent permitted by law, any dispute, controversy or claim between or among Monk and any party released by Monk herein, arising out of or based upon or relating in any way to this Agreement, or to Monk's employment or other association with GS&Co., or the termination of Monk's employment, will be settled by arbitration. Any such arbitration will be conducted in New York City before the Financial Industry Regulatory Authority ("FINRA") in accordance with applicable FINRA rules then in effect. Monk agrees to submit to the jurisdiction of and agree that venue is proper in the federal and state courts located in the State of New York, New York County, in connection with any application for provisional relief in aid of arbitration concerning the breach or threatened breach of this Agreement. Monk agrees that any arbitration decision or award will be final and binding upon the parties and may be entered as a judgment in any appropriate court.

The Parties understand and acknowledge that they are agreeing to arbitrate all claims described above, in accordance with the arbitration procedure set forth there. This Agreement does not include an agreement to arbitrate claims on a class, collective or representative basis. It is explicitly agreed that, to the fullest extent permitted by applicable law, no arbitrator shall have the authority to consider class, collective or representative claims, to order consolidation or to join different claimants or grant relief other than on an individual basis to the individual claimant involved. It is further explicitly agreed that, notwithstanding any applicable forum rules to the contrary, to the extent there is a question of enforceability of this Agreement arising from a challenge to the arbitrator's jurisdiction or to the arbitrability of a claim, such question shall be decided by a court and not an arbitrator.

Monk acknowledges that his obligation to arbitrate matters arising out of or based upon or relating in any way to this Agreement, or to his employment or other association with GS&Co., or the termination of his employment applies irrespective of whether GS&Co. is or would be a party to any such arbitration (e.g., if he elects to pursue a claim against another employee, including Monk's manager). Monk agrees that GS&Co. may intervene in any such arbitration to which GS&Co. is not a party if GS&Co. determines, in its judgment, that GS&Co. has an interest in the outcome of the arbitration.

For the avoidance of doubt, the Federal Arbitration Act governs interpretation and enforcement of all arbitration provisions under this Agreement, and all arbitration proceedings thereunder.

9.  ADEA Acknowledgement. Monk expressly acknowledges and recites that: (a) Monk is entering into this Agreement knowingly and voluntarily, without any duress or coercion; (b) Monk has read and understands this Agreement; (c) Monk is entering this Agreement in full settlement of all claims, or possible claims, that he may have as a result of his employment with or separation of employment from GS&Co., including claims under the ADEA; (d) the terms set forth herein are adequate, sufficient and valuable consideration for the release set forth in Section 2; (e) Monk is hereby advised in writing to consult with an attorney with respect to this Agreement before signing it; (f) Monk has not been forced to sign this Agreement by any employee or agent of GS&Co.; (g) Monk was provided twenty-one (21) calendar days after receipt of the Agreement to consider its terms before signing it; and (h) Monk has seven (7) calendar days from the date of signing to terminate and revoke this Agreement, in which case this Agreement shall be unenforceable, null and void. Monk may revoke this Agreement during those seven (7) days by delivering written notice of revocation to GS&Co.'s counsel, Jill Rosenberg, at jrosenberg@orrick.com. If Monk does not revoke during the seven-day revocation period, this Agreement will take effect on the eighth (8th) day after the date he signs the Agreement (the "Effective Date").

10. Severability. In the event that one or more of the provisions, or portions thereof, of this Agreement are determined to be invalid or unenforceable for any reason, the remainder of this Agreement shall be unaffected and shall remain in full force and effect to the fullest extent permitted by law; provided, however, that if any court or arbitrator finds that the waiver and release of claims by Monk (or any part thereof) referred to herein is unlawful or unenforceable, or was not entered into knowingly and voluntarily, Monk agrees, at GS&Co and GS Group's option, either to return the consideration provided for in this Agreement or to execute a waiver and release in a form satisfactory to GS&Co. and GS Group that is lawful and enforceable.

11. Complete Agreement and Reaffirmation of Obligations. This Agreement is the entire understanding between Monk, GS&Co., and GS Group relating to the subject matter of this Agreement, and, after the Effective Date, the Agreement may not be modified or canceled in any manner, nor may any provision of it or any legal remedy with respect to it be waived, except by a writing signed by Monk and an authorized official of both GS&Co. and GS Group.

12. Headings. The headings of sections contained in this Agreement are for convenience only and will not be deemed to control or affect the meaning or construction of any provision of this Agreement.

13. Joint Participation. The Parties hereto participated jointly in the negotiation and preparation of this Agreement, and each Party was represented by legal counsel who had the opportunity to review and comment upon the Agreement. Accordingly, it is agreed that no rule of construction shall apply against any Party or in favor of any Party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against one Party and in favor of the other.

14. <u>Knowing and Voluntary</u>. By executing this Agreement, Monk certifies that he has read all of the terms of this Agreement, that he has discussed it with his attorneys who negotiated its terms, that he has had a reasonable opportunity to consider its terms, and that he fully understand its terms and their effect. Monk further certifies that he is signing this Agreement knowingly and voluntarily and without coercion in exchange for the release described herein which he acknowledges as adequate and satisfactory to him and as to which he would not otherwise be entitled.

15. <u>Governing Law</u>. This Agreement is made under and shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to its choice of law provisions.

16. <u>Execution of Agreement</u>. This Agreement may be executed in counterparts, each of which shall be considered an original, but which when taken together, shall constitute one Agreement. The Agreement, to the extent signed and delivered by means of a facsimile machine or by PDF File (portable document format file), shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the originally signed version delivered in person. At the request of any Party hereto, each other Party shall re-execute original forms hereof and deliver them to all other Parties.

PLEASE READ THIS ENTIRE AGREEMENT AND CAREFULLY CONSIDER ALL OF ITS PROVISIONS BEFORE SIGNING IT. TO THE EXTENT PROVIDED BY LAW, THIS AGREEMENT CONTAINS A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS, INCLUDING ALL CLAIMS UNDER FEDERAL, STATE, AND LOCAL LAWS.

**[THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK]**

**David Monk**

*[signature: Monk]*

David Monk
Date: 10/21/21

**Goldman Sachs Group, Inc.**

*[signature: Adam Heft]*

Adam Heft
Date: 10/25/21

**Goldman Sachs & Co. LLC.**

*[signature: Adam Heft]*

Adam Heft
Date: 10/25/21

## Exhibit A

FINRA DISPUTE RESOLUTION

| | |
|---|---|
| DAVID MONK,<br><br>    Claimant,<br><br>  -against-<br><br>GOLDMAN SACHS & CO. LLC and GOLDMAN SACHS GROUP, INC.,<br><br>    Respondents. | FINRA Arbitration Number 20-00770 |

## STIPULATION OF DISCONTINUANCE WITH PREJUDICE

Pursuant to FINRA Rules 13700 and 13701, Claimant David Monk ("Claimant") and Respondents Goldman Sachs & Co. LLC and Goldman Sachs Group, Inc. ("Respondents") hereby submit this Stipulation of Discontinuance With Prejudice, immediately withdrawing and dismissing all pending claims alleged by Claimant against Respondents with prejudice.

Dated: October 12, 2021

By: _____
Daniel J. Kaiser, Esq.
Kaiser Saurborn & Mair PC
*Counsel For Claimant*

By: /s/ Jill L. Rosenberg
Jill L. Rosenberg, Esq.
Mark R. Thompson, Esq.
Orrick, Herrington & Sutcliffe LLP
*Counsel For Respondents*